IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:09cv271

JAMES L. NICHOLSON, )
)
    Plaintiff, )
) MEMORANDUM OF
vs. ) DECISION AND ORDER
)
MICHAEL J. ASTRUE, )
Commissioner of Social Security, )
)
    Defendant. )
)

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 15] and the Defendant's Motion for Summary Judgment [Doc. 20].

I.    **PROCEDURAL HISTORY**

Plaintiff filed an application for disability benefits under Titles II and XVI of the Social Security Act on May 11, 2004, alleging disability with an onset of September 15, 2003. [T. 106]. Plaintiff's claims were denied initially and on reconsideration. [T. 80-4, 77-8]. A hearing was held before Administrative Law Judge (hereinafter, "ALJ") Ivar Avots on August 16, 2006. [T. 36-71]. On December 27, 2006, the ALJ issued a decision denying the Plaintiff benefits. [T. 21-31]. The Appeals Council granted

review of the ALJ's decision, finding that it was not supported by substantial evidence. [T. 12-16]. On May 21, 2009, however, the Appeals Council vacated its determination, thereby making the ALJ's decision the final decision of the Commissioner on the earlier claim. [T. 6-11]. The Plaintiff has exhausted all available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, see Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

The Social Security Act provides that "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). The Fourth Circuit has defined "substantial evidence" as "more than a scintilla and [doing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401, 91 S.Ct. at 1427).

The Court may not re-weigh the evidence or substitute its own judgment for that of the Commissioner, even if it disagrees with the Commissioner's decision, so long as there is substantial evidence in the record to support the final decision below. Hays, 907 F.2d at 1456; Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. THE SEQUENTIAL EVALUATION PROCESS

In determining whether or not a claimant is disabled, the ALJ follows a five-step sequential process. 20 C.F.R. §§404.1520, 416.920. If the claimant's case fails at any step, the ALJ does not go any further and benefits are denied. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

First, if the claimant is engaged in substantial gainful activity, the application is denied regardless of the medical condition, age, education, or work experience of the applicant. 20 C.F.R. §§404.1520, 416.920. Second, the applicant must show a severe impairment. If the applicant does not show any impairment or combination thereof which significantly limits the physical or mental ability to perform work activities, then no severe impairment is shown and the applicant is not disabled. Id. Third, if the impairment meets or equals one of the listed impairments of Appendix

1, Subpart P, Regulation 4, the applicant is disabled regardless of age, education or work experience. Id. Fourth, if the impairment does not meet the criteria above but is still a severe impairment, then the ALJ reviews the claimant's residual functional capacity and the physical and mental demands of work done in the past. If the claimant can still perform that work, then a finding of not disabled is mandated. Id. Fifth, if the claimant has a severe impairment but cannot perform past relevant work, then the ALJ will consider whether the applicant's residual functional capacity, age, education, and past work experience enable the performance of other work. If so, then the claimant is not disabled. Id.

## IV. FACTS AS STATED IN THE RECORD

Evidence of record may fairly be summarized as follows: Plaintiff worked primarily as a commercial wire journeyman, and did past work as a grommet installer. His last day working was the date the plant where he was employed closed. He had a physical history of back trauma and pain, and a psychosocial history of alcoholism, significant tobacco abuse, and a bad conduct discharge from the Navy, along with a remote history suggestive of a personality disorder. The Social Security Administration noted degenerative disc disease and chronic obstructive pulmonary disease (COPD) as his major disabling problems. Significantly, no treating

4

physician statement about Plaintiff's limitations is of record; the only evidence of limitations relating to residual functional capacity was produced by a Single Decision Maker, who is not an accepted source of medical evidence under 20 CFR 404.1527.

Pertinent specific evidence is as follows:

The Plaintiff was 56 years old at the time of the ALJ's hearing. [T. 70, 16]. He completed the ninth grade. [T. 135].

The disability development portion of the transcript contains the following evidence:

In his form SSA-3368 [T. 116-123], Plaintiff said he had trouble standing and sitting for long periods, and fell a lot because of pinched nerves that made his legs give out. His impairments made him take a lighter duty job. [T. 117]. His past work was as a commercial wire journeyman on and off for 10 years, where he lifted 50 pounds frequently.

In a Form SSA-3441-BK dated October 21, 2004 [T. 127-133], Plaintiff reported that shortness of breath affected his ability to walk, neck pain impaired driving, poor vision and intense headaches made it difficult to read or rest, and pain over 90% of his body made it hard to do anything. He was uncomfortable sitting, standing, and lying down.

In a Pain Questionnaire received by Disability Determination Services

5

(DDS) on May 28, 2004, Plaintiff indicated a history of trauma to his back 28 years ago with reinjury in 1993. He had constant pain in his back, legs, arms, hands and neck, radiating through his hips. He took no medication for it. [T. 161-162].

Medical evidence is as follows:

Records from ABCCM Medical Ministry from December 19, 2000 to January 2, 2001 [T. 192-7] show complaints of a 2 year history of lower back pain, stiffness in his neck, and pain with using his right arm overhead. His spine extension and rotation were 50% of normal. [T. 197].

Plaintiff visited Dr. Craig Boatright on December 10, 2002 for an acute exacerbation of low back pain radiating into both legs. Xrays showed advanced spondylosis throughout the lumbar spine, advanced osteophyte formation at two lumbar levels, and loss of disc height at every lumbar level. He was assessed with improving low back pain, and a sporadic and improving left lower extremity radicular pattern of pain and numbness. [T. 270].

The Plaintiff received physical therapy for back pain at Mission Hospital from September 22 to September 30, 2003. [T. 339-356]. It was anticipated after initial examination that his functioning could be improved, but not fully restored by physical therapy. [T. 354].

Plaintiff was evaluated by Dale F. Mabe, D.O., for DDS on July 28, 2004. [T. 368-79]. On exam, he demonstrated memory difficulty, antalgic gait, and walking with a limp but without assistance. His neck was tender and had decreased range of motion. His breath sounds were decreased bilaterally, and a mild expiratory wheezing was noted bilaterally. Evaluation of the spine indicated generalized lower back tenderness with negative Straight Leg Raising Test (SLR). His back and neck range of motion were diminished, the neck significantly. [T. 373]. Dr. Mabe suggested a psychiatric evaluation, an x-ray of his cervical and lumbar spine, a chest x-ray and a pulmonary function test.

On July 30, 2004, Plaintiff underwent psychological evaluation by Karen Marcus, Psy.D. [T. 362-7]. He stated that his work installing snaps and grommets ended with plant closure. [T. 363-4]. He claimed to have been sober since 1994, and to have had no mental health treatment other than alcohol treatment. [T. 364]. He was in the Navy from 1964 through 1967 and was discharged for bad conduct, namely not following orders. [T. 363]. His psychological symptoms included recently thinking he saw and heard things such as lights coming up the driveway, car doors slamming, and footsteps in the house, as well as easy irritability. [T. 364]. His activities of daily living (ADLs) included cleaning house, walking around the

yard, fixing something to eat, and doing laundry weekly. He was assessed as being cooperative, and in touch with reality. He had appropriate speech, good insight and intellect, and functional judgment and fund of information. Dr. Marcus concluded that he could remember and follow directions, but not keep up in a production setting. He might have problems getting along with others and managing stress and criticism. [T. 366].

On August 30, 2004, W. Henry Perkins, Ph.D. performed a Psychiatric Review Technique on Plaintiff for DDS. [T. 380-93]. He found no severe impairments, citing the lack of a history of mental health treatment. Dr. Perkins did not diagnose or specify the presence of any specific mental impairment, and indicated that the only records he reviewed were Dr. Marcus'.

On August 30, 2004, Simon P. Naylor, SDM[1], performed a physical residual functional capacity (RFC) assessment for DDS. [T. 395-402]. He determined Plaintiff could perform medium work while avoiding concentrated exposure to fumes, odors, dusts and gases.

Plaintiff was treated at Hot Springs Health Program by Dr. Heiselman from March 31 to December 7, 2005. [T. 416-427]. At his initial exam on

---

[1] SDM is the Social Security Administration's acronym for Single Decision Maker. The acronym connotes no medical credentials.

8

April 14, he reported leg weakness and spotty loss of sensation. He only slept two hours at a time due to neck pain. He had shortness of breath at rest, severe headaches, and stomach pain with loss of weight and appetite. He had been on no medication since 2003, when he lost his insurance. His headaches improved with amitriptyline. His stomach pain and appetite were improved with Prilosec, and his breathing was improved by Spiriva. By June 7, his headaches had diminished from constant to occasional. He still had shortness of breath. His right arm was constantly tingling, and some neck pain was present. On August 9, he complained of constant neck pain and right arm tingling, increased lower back pain radiating down the left leg, and his leg giving out. On October 6 he reported that he was sleeping better, and had less frequent and less severe headaches. A TENS unit helped his low back pain significantly. However, neck pain, right arm numbness and tingling, and right hand uncoordination, along with increased back pain were noted on November 7. He was referred to a neurosurgeon because a cervical MRI showed right foraminal stenosis at C3-4 and bilateral foraminal stenosis at C6-7. On December 7, Plaintiff reported some improvement to his back and left leg pain with dexamethasone. The TENS unit was again helping his back pain, but it did not improve functioning.

Plaintiff again received physical therapy from August 18 to September 22, 2005. [T. 404-15].

The Plaintiff was admitted to Mission Hospital on December 29, 2005 for an anterior cervical diskectomy and fusion (ACDF) at C5-6 and 6-7. [T. 428-529]. He stated that this gave good relief of his arm pain. [T. 428].

Records of Mountain Neurological Center from April 11, 2001 to April 20, 2007 include records submitted to the Appeals Council after the ALJ's hearing. [T. 530-559, 574-588]. In 2001, left lower extremity weakness and sensory change slowed down his work production some. He reported unsteadiness but no falls. [T. 558]. His flexion/extension films showed lack of motion at C2-4, which appeared to be fused. On February 5, 2007, he underwent a microlumbar diskectomy exploratory surgery, bilateral at L4-5. [T. 582]. His postoperative diagnosis was lumbar stenosis, lateral recess narrowing bilaterally, left greater than right leg pain. [T. 577].

At the hearing before the ALJ, Plaintiff testified that he lives alone in a van behind a friend's house. [T. 38]. He served in the Navy and received a bad conduct discharge for going absent without leave. [T. 39-40]. He receives Medicaid benefits. [T. 41]. He lost his driver license due to impaired driving charges. [T. 42]. He last worked at Simula Safety Systems, assembling grommets, tying pilot sheets, and installing snaps

and grommets. He hurt his lower back in 1999, and his health insurance ran out before he could obtain all the required treatment. [T. 48, 51].

Plaintiff testified that he could stand ten or fifteen minutes at a time, walking to the mailbox (one eighth of a mile) required several breaks because he would run out of breath and his legs would get weak, and sitting was difficult. [T. 48-49, 55]. Numbness in his right hand, and pain in his fingers that had been resolved for a time by the surgery, had returned. He could lift a gallon of milk with his left hand but not his right. [T. 50-1]. Pain from his lower back would shoot through his hips and legs, especially his left leg. His legs sometimes gave out, especially his left leg. [T. 51]. His back pain was constant, and except for two to three months after his neck surgery, his neck pain was constant. For about three years, he had suffered from constant pain in both shoulders. He had suffered from headaches most of his life, with increased symptoms in the three years preceding the hearing. He was unable to afford the medications for the pain and headaches, or doctor appointments. [T. 53]. He was taking Aleve for pain, and could sit for no more than 30 minutes before leg numbness and back pain started. [T. 54]. Shortness of breath limited his climbing stairs and ladders. [T. 59].

## V. THE ALJ'S DECISION

On December 27, 2006, the ALJ issued a decision denying the Plaintiff's claim. [T. 24-31]. Proceeding to the sequential evaluation, the ALJ found that the Plaintiff's date last insured was December 31, 2008. [T. 26]. He then found that Plaintiff had not engaged in any substantial gainful activity since his alleged onset date of September 15, 2003. [T. 26]. The ALJ then found the following impairments to be severe impairments: cervical degenerative disc disease, lumbar spondylosis, chronic obstructive pulmonary disease (COPD), and being status post anterior cervical diskectomy and fusion (ACDF). [T. 26]. He found headaches and mental impairments were not severe, and that if limitations identified by Dr. Marcus existed, they were primarily due to episodic use of alcohol and a long history of alcohol abuse. [T. 27-8]. The ALJ concluded, however, that the severe impairments did not meet or equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. [T. 28]. The ALJ assessed the Plaintiff's residual functional capacity, finding that he could perform medium work, lifting 50 pounds occasionally, and 25 pounds frequently; stand, walk and sit six of eight hours; with limitations to avoiding concentrated exposure to fumes, odors, dusts and gases. [T. 28]. He found that Plaintiff was able to perform his past relevant work as grommet installer. [T. 30].

Accordingly, the ALJ concluded that the Plaintiff was not "disabled" as defined by the Social Security Act from the amended onset date of September 15, 2004 through the date of the ALJ's decision. [T. 30].

## VI. DISCUSSION

Plaintiff assigns error to the ALJ's RFC assessment, particularly in his having disregarded and given no weight to the opinion of Dr. Karen Marcus regarding Plaintiff's mental impairments, and having failed to consider and analyze Plaintiff's subjective complaints of pain which led to the conclusion that Plaintiff could perform his past relevant work (step four). For the reasons stated below, the Court finds that the ALJ attributed impermissible weight to certain State Agency evidence, and thus his RFC assessment was not supported by substantial evidence. Therefore, the determination that Plaintiff could perform his past relevant work and the decision based thereon must be reversed.

Before beginning a step four determination, the ALJ must determine Plaintiff's RFC. 20 CFR 404.1520(e). Residual functional capacity represents the most that the Plaintiff can still do despite his limitations. 20 CFR 404.1545(a)(1).

> All relevant evidence is evaluated to determine RFC; this includes medical history, the effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment,

> duration, disruption to routine, side effects of medication), reports of daily activities, medical source statements, effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment . . .[and more]. SSR 96-8p at *5.

From that evidence, the nature of physical and mental limitations are to be determined, and then their impact on a claimant's ability to perform physical and mental work functions. 20 CFR 404.1545(a)(3), (b) & (c).

When assessing RFC, an ALJ must weigh medical opinions from accepted medical sources, as identified in SSR 06-03p, that are suggestive of limitations on Plaintiff's ability to perform physical and mental work functions. The ALJ must evaluate every opinion, and unless he gives a treating source's opinion controlling weight, to evaluate all of the following factors in deciding the weight to attribute to any medical opinion: (1) Examining versus non-examining relationship; (2) treating versus consulting relationship, with more weight to longer relationships with more frequent examinations, and to those resulting in the greater knowledge of the treating source about the impairments; (3) supportability of the opinion through medical signs and laboratory findings; (4) consistency with the record as a whole; (5) specialization in the issues opined upon; and (6) other factors. *See* 20 CFR 404.1527.

Plaintiff argues that the ALJ improperly gave no weight to the opinion of

Karen Marcus, Psy.D., who opined about limitations on his capacity to perform mental work functions. In fact, the ALJ discounted all evidence of Plaintiff's capacity, except for

> A State agency medical consultant provided an opinion that the claimant retains the exertional residual function capacity to perform a reduced range of medium work (Exhibit 17F). I afford weight to the medical consultant's opinion as I don't believe there is an examining or treating physician's opinion in the record. . . . Based on 17F, I find he can perform sitting for about 6 out of 8 hours, standing/walking a total of 6 out of 8 hours.

[T at 30].

The opinion in Exhibit 17F regarding Plaintiff's limitations with respect to physical work functions was made by Simon P. Naylor, SDM. The designation SDM is for "Single Decision Maker." The ALJ's exclusive reliance on this SDM's opinion presents three errors.

First, attributing any weight whatsoever to Naylor's RFC was error. An "SDM is not a medical professional of any stripe, and a finding from such an individual is entitled to no weight as a medical opinion, or to consideration as evidence from other non-medical sources." *See, e.g.,* Bolton v. Astrue, FN25, 2008 WL 2038513 (M.D.Fla. May 12, 2008) .[2] Since the ALJ stated that he

---

[2] The use of "SDMs", Single Decision Makers, is authorized as a test modification to the standard disability determination process in 10 states and 20% of cases outside those states nationally. 64 FR 47218-01. North Carolina is not one of the test states. The implementing regulation is 20 CFR 404.906(b). Although the test modification applies to the initial application stages, it does not change agency policy or law on how the ALJ weighs various sources of evidence in assessing residual functional

was relying on the SDM's "medical" opinion to the exclusion of all other evidence of residual capacity, this alone mandates reversal of the ALJ's decision.

This error even permeates the manner in which the record of this case is presented to this Court. At page three of the record, the Commissioner indexes the agency RFC assessment (Exhibit 17F) as "RFC - Residual Functional Capacity Assessment - Physical (completed by DDS *physician*) dated 08/30/04." (emphasis added). Such denomination of a person with no medical credentials whatsoever, as a "medical consultant" or "physician" when relying on assertions by an SDM to support medical findings was error. Kempel v. Astrue, 2010 WL 58910 (D.Kan. 2010)[3]

---

capacity. Lawrence v. Astrue, 2010 WL 2990760 (W.D.Wash.,2010). Thus, courts in the nine states where the SDM test model has been practiced have routinely rejected ALJs' reliance on RFCs created by SDMs. While there is no Fourth Circuit decision on the topic, and no test state falls within the Circuit, examples from the test states are Casey v. Astrue, 2008 WL 2509030 (S.D. Ala. June 19, 2008)(an RFC assessment completed by a disability specialist is entitled to no weight); Hall v. Astrue, 2007 U.S. Dist. LEXIS 95776 (S.D.Ala. Nov. 7, 2007) (holding that the opinion of a disability examiner "simply does not supply the substantial evidence needed to support the ALJ's determination"), Greenfield v. Astrue, 2010 WL 2132057 (D.Kan, 2010), Klobas v. Astrue, 2010 WL 383141 (D.Colo., 2010), Bolton v. Astrue, 2008 WL 2038513 (M.D.Fla.2008).

[3]The Kemple court noted that such errors were found in cases including: Lindsay v. Astrue, 2009 WL 2382337 at *4 (W.D.Mo. July 30, 2009)(ALJ factually incorrect in referring to SDM as medical consultant); Smith v. Astrue, 2009 WL 890391 at *11 (M.D.Fla. March 31, 2009)(ALJ improperly classified SDM as physician); Jones v. Astrue, 2008 WL 1766964 at *9 (S.D.Ind. April 14, 2008)(ALJ weighed opinion of SDM as opinion of a nonexamining physician).

In reality, *no one* with medical credentials provided an RFC assessment for the State Agency. The ALJ noted the absence of an opinion from an accepted medical source, but then proceeded to rely exclusively on the SDM's opinion, even though he had no medical credentials either.

Second, regulations require the Administration to make reasonable efforts to seek out a claimant's records, 20 CFR 404.1512(e), even if claimant is represented by an attorney. Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996), Baker v. Bowen, 886 F.2d 289, 292 n.1 (10th Cir. 1989). This circuit has held that the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely only on the evidence submitted by the claimant when that evidence is inadequate. Cook v. Heckler, 783 F.2d 1168 (4th Cir. 1986)(internal citations omitted). "The ALJ must make every effort to ensure that the file contains sufficient evidence to assess RFC. Without evidence to support his findings, the ALJ is not in a position to make an RFC determination." Fleetwood v. Barnhart, 211 Fed. Appx. 736, 740 (10th Cir. Jan. 4, 2007). Not procuring an accepted source opinion on RFC represents a failure of the ALJ in his duty to develop the record. As such, it was error.

Third, the ALJ's conclusions must have a rational basis. Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir.1974). In the absence of any accepted

17

source opinion expressing Plaintiff's limitations in the form of residual functional capacity, the ALJ's findings about RFC could only have resulted from his own unqualified lay opinion. Jackson v. Astrue, 2010 WL 500449 at *7 (D.S.C.,2010)(quoting Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir.1999) (emphasis added) and citing Manso-Pizarro v. Sec'y of Health & Human Services, 76 F.3d 15, 17 (1st Cir.1996)).

Based on these errors the Court must conclude that substantial evidence does not support the ALJ's determination that Plaintiff is not disabled.

## V. CONCLUSION

These errors require remand. Upon remand, the ALJ shall develop the record on Plaintiff's RFC. The ALJ shall not rely on the findings of the non-physician Single Decision Maker (SDM), but shall obtain a consultative examination from a physician. He shall grant a new hearing, properly weigh medical evidence, re-evaluate Plaintiff's residual functional capacity, and render a new decision.

In light of this decision, Plaintiff's other assignments of error need not be addressed, but he is free to raise them upon remand.

## ORDER

Accordingly, **IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion

for Summary Judgment [Doc. 15] is **GRANTED** to the extent that the Plaintiff seeks reversal of the Commissioner's decision denying him disability benefits. To any extent that the Plaintiff seeks an immediate award of benefits, the Plaintiff's Motion [Doc. 15] is **DENIED**.

Pursuant to the power of this Court to enter a judgment affirming, modifying or reversing the decision of the Commissioner under Sentence Four of 42 U.S.C. § 405(g), the decision of the Commissioner is **REVERSED**, and this case is hereby **REMANDED** to the Commissioner for further administrative action consistent herewith.

**IT IS FURTHER ORDERED** that the Defendant's Motion for Summary Judgment [Doc. 20] is **DENIED**.

A judgment shall be entered simultaneously herewith.

**IT IS SO ORDERED.**            Signed: October 29, 2010

Martin Reidinger
United States District Judge